IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AUGIE'S TRUCK SERVICE, INC.,
AUGIE DURANTE and
PABLITA DURANTE,

        Plaintiffs,

vs.

        No. CIV 99-1179 RLP/DJS

AMERICAN STATES INSURANCE COMPANY,

        Defendant.

**REPLY MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE TO EXCLUDE PLAINTIFFS' EXPERT
OR FOR A *DAUBERT* HEARING**

**I.    Introduction.**

The Plaintiffs supplemented their Response with a copy of the transcript of the continued

deposition of their purported expert, Gary Carlisle, which was noticed by Plaintiffs' counsel and

which occurred on August 21, 2000.[1] Plaintiffs' counsel noticed the continued deposition of

their expert after being informed that a *Daubert* motion was forthcoming. The deposition, thus,

was an attempt to shore up Plaintiffs' crumbling expert.

However, as will be demonstrated herein, and in the Second Affidavit of Robert D.

Booth, (Defendant's expert), filed concurrently herewith, the evidence presented at the continued

deposition of Mr. Carlisle stills fall far short of establishing either Mr. Carlisle's credentials as

---

[1] A complete copy of the transcript of the August 21, 2000, deposition of Mr. Carlisle has been
served by the Plaintiffs. Counsel agreed in advance of the filing of that deposition transcript that the time
for filing Defendant's Reply would commence after service of Plaintiffs' pleading including such
deposition transcript. **All citations herein to the Deposition of Gary Carlisle, unless otherwise stated,
reference this August 21, 2000, deposition. Page references to the June 21, 2000 Carlisle
Deposition are included as Exhibits to the Memorandum in Support of Defendant's Motion in
Limine, unless specifically cited herein and attached hereto.**



an expert or the reliability of his opinions.

In addition, the methods employed by the Plaintiffs in their attempt to prop up their expert violated the Court's Initial Pretrial Report and Rule 26, and justify the imposition of sanctions pursuant to Rules 26 and 37. Defendant's Motion in Limine to Exclude Plaintiffs' Expert or For a *Daubert* Hearing ("*Daubert* Motion") and supporting Memorandum requested the imposition of sanctions beyond the exclusion of Plaintiffs' expert in the form of attorney's fees, expert witness fees and costs.[2]

**2.    The Plaintiffs' Attempt to Rehabilitate Their Expert Violated the Court's Initial Pretrial Report and Rule 26, Further Justifying Exclusion of Plaintiffs' Expert and the Imposition of Sanctions Under Rules 26 and 37.**

The Court's Initial Pretrial Report required that Plaintiff provide expert reports pursuant to Fed.R.Civ.P. 26(a)(2)(B) no later than March 8, 2000. This deadline was extended by the Court's Stipulated Order Extending Expert Witness Disclosure Deadline (Doc. #31) until April 15, 2000.[3]

At Mr. Carlisle's continued deposition on August 21, 2000, Plaintiffs' counsel tendered as exhibits documents Mr. Carlisle found on the Internet, namely the "Citizens Guide to Blasting" (Carlisle Depo. Ex. 2); "TerraTek Rock Mechanics, The Difference Between Static and Dynamic Mechanical Properties" (Carlisle Depo. Ex. 3); "TerraTek Rock Mechanics: Calibration of Wire-Line Logging Acoustics" (Carlisle Depo., Ex. 4); and "TerraTek:

---

[2] See *Daubert* Motion, prayer for relief, and Memorandum in Support of Motion in Limine to Exclude Plaintiffs' Expert or For a *Daubert* Hearing, p. 22.

[3] The parties also agreed by letter dated May 12, 2000, that if blasting records from the Twin Buttes quarry were discovered, each party's expert could supplement their reports with an evaluation of such records. See attached Exhibit "A." Plaintiffs provided the report of Mr. Carlisle dated April 15, 2000 (attached to Carlisle 06/21/00 Depo. as Exhibit 1) on April 17, 2000 (Docket #40).

Background." (Carlisle Depo., Ex. 5).[4]

Defendant was not given advance copies of such exhibits, nor given specific notice that Mr. Carlisle would be relying upon these documents. Defendant objected during the deposition to the offering or use of the new documents. (Carlisle Depo., p. 16.).[5] In addition, at his initial deposition on June 21, 2000, Mr. Carlisle produced a set of photographs taken on June 20, 2000, and relied upon them as a basis for his deposition testimony the next day. (Carlisle Depo., 6/21/2000, p. 5, Exhs. 2 and 12.) These exhibits likewise had not been produced to the Defendant on a timely basis pursuant to the Court's Initial Pretrial Report, nor was the Defendant given prior notice of such documents nor of their use.[6] Finally, Plaintiffs' expert modified his April 15, 2000, Rule 26 report through his subsequent Internet "research," although his modifications are scientifically unsupportable.

The Plaintiffs' conduct violates the Court's Initial Pretrial Report, and violates Rule 26(a)(2)(B) and (C). That Rule requires that a party must disclose "at the times and in the sequence directed by the court" their expert's report, containing among other things "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a

---

[4] The exhibits to Mr. Carlisle's August 21, 2000, deposition were attached as exhibits to Plaintiff's Response. One of the exhibits--the "Citizens Guide to Blasting" -- was apparently found for Mr. Carlisle by Plaintiffs' counsel. Carlisle Depo., p. 26.

[5] Mr. Carlisle's June 21, 2000, deposition was noticed *duces tecum* and required that he bring with him: "Any and all documents upon which you relied in preparation of your expert report, including but not limited to any and all documents, reports, draft reports, notes, or photographs photographs diary entries, test reports, public records (including records of blasting activities), journals, calendars, technical manuals, tables, references, texts, and other reports or written information." The documents that Mr. Carlisle brought with him were attached as exhibits to that deposition transcript.

[6] Discovery closed on August 12, 2000; Plaintiffs' counsel was only allowed to further depose his own expert upon verbal direction of Magistrate Don Svet. Trial is set for December 18, 2000.

3

summary or support for the opinions."

The Plaintiffs' conduct justifies the imposition of sanctions pursuant to Rules 26 and 37. A district court may impose sanctions for a party's failure to obey a scheduling order including any of the sanctions provided in Rule 37(b)(2)(B), (C), and (D). See Fed. R. Civ. P. 16(f). The Court has considerable discretion when it comes to imposing sanctions under Rule 37(b). Fed. R. Civ. P. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976).

In determining which sanctions should be imposed, the Court must consider the purposes to be served by the imposition of sanctions.[7] The primary goal of sanctions is to deter misconduct. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990). Although *White, supra*, involved sanctions under Rule 11, its principles apply equally to sanctions under Rules 26 and 37. See *Law v. National Collegiate Athletic Ass'n*, 167 F.R.D. 464, 478 n.22 (D. Kan. 1996).

A party who without substantial justification fails to disclose information in compliance with Rule 26(a) "shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion **any witness** or **information** not so disclosed." Fed. R. Civ. P. 37(c)(1). (Emphasis added). In addition, Rule 16(f) authorizes a District Court to impose sanctions for the breach of a scheduling order. In applying these Rules, it must be recognized that "the failure to disclose in a timely manner is equivalent to failure to disclose," and that a party must produce the required evidence "within deadlines set by the court or risk sanctions under Rule 16 and 37." *Transclean Corp. v. Bridgewood Services*, 101 F. Supp.2d 788, 795 (D.

---

[7]In *White v. General Motors Corp., Inc.*, 908 F.2d 675 (10th Cir. 1990), cert. denied, 498 U.S. 1069 (1991), the Tenth Circuit outlined those purposes as including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management. 908 F.2d at 683.

Minn. 2000), citing *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998).

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (citing *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)). Absent a showing of justification, the language of Rule 37(c)(1) states expressly that sanctions are mandatory.

In determining a sanction, the district court should consider the following factors: (1) the prejudice or surprise to the party against whom the testimony is offered: (2) the ability of the party to cure the prejudice: (3) the extent to which introducing such testimony would disrupt the trial: and (4) the moving party's bad faith or willfulness. See *Woodworker's Supply*, 170 F.3d at 993.

In the case at bar, the Court required the Plaintiffs to disclose their expert's report, and all information required under Rule 26(a)(2)(B), by April 15, 2000. Under that deadline, the Plaintiffs' expert produced a report that is unsupported by even the most liberal reading of the *Daubert* requirements. After the Defendant took Mr. Carlisle's deposition, counsel for the Defendant warned counsel for the Plaintiffs that their expert was clearly unqualified and that exclusion and sanctions would be sought. In response, Plaintiffs' counsel noticed his own expert for deposition. And, Mr. Carlisle conducted internet "research," and at the deposition produced for the first time the documents obtained on the internet, which he then relied upon for the opinions expressed in the deposition.[8]

---

[8] Given the wealth of texts and treatises on blasting, geology, and rock mechanics. Mr. Carlisle's additional "research" makes a mockery of scientific inquiry.

Defendant was prejudiced by the ambush tactics of Plaintiffs' counsel.[9] The Defendant did not have the exhibits that Mr. Carlisle would rely upon on August 21 in advance of that date so that it could evaluate the materials, consult with its expert, Robert D. Booth, and thereby prepare cross-examination of Mr. Carlisle on the basis of such well-considered evaluation. Although Defendant is able to rebut the testimony of Mr. Carlisle through a further affidavit of Mr. Booth, this is no substitute for cross-examination based upon evaluation of Mr. Carlisle's materials in advance of his deposition.

This chain of events demonstrates incurable prejudice, bad faith and willful conduct on the part of Plaintiffs and their counsel. Such tactics justify exclusion of Mr. Carlisle as an expert in this case. *Freeland v. Amigo*, 103 F.3d 1271 (6th Cir. 1997). Moreover, the conduct of Mr. Carlisle justifies exclusion because of the considerable and unjustified variance between Mr. Carlisle's Rule 26 report and his ultimate testimony, which was clearly orchestrated by Plaintiffs and their counsel. *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 175 F.3d 18, 34 (1st Cir. 1999). The Plaintiffs cannot expect that they can enable their expert to pass muster under *Daubert* with even the shabby research conducted by Mr. Carlisle where such "research" violates Rule 26.

**3.     Plaintiffs Have Failed to Rebut the Evidence of Their Expert's Unreliability.**

Plaintiffs fail to dispute or rebut the exhaustive facts asserted by Defendant as to the qualifications or reliability of their expert. Instead, Plaintiffs offer nothing more than an

---

[9] One week prior to his deposition of Mr. Carlisle on August 21, 2000, Plaintiffs' counsel mailed to defense counsel a Notice of Supplementation, which stated Plaintiffs intended to use the blasting records, and "standards from various states, including Indiana, for peak particle velocities at distances from quarries." See attached Exhibit "B." At no time prior to the August 21 deposition did Plaintiffs' counsel provide defense counsel with copies of any of the exhibits relied upon by Mr. Carlisle, except for the blasting records which had already been discovered by the Defendant.

**unsupported** general objection to the Defendant's facts. Resp., p. 4. Having failed to adequately rebut the clear and exhaustive record created by the Defendant, the Plaintiffs simply throw up their hands and assert that Mr. Carlisle's deposition transcript "speaks for itself." *Id.* Having taken the extraordinary step of continuing the deposition of their own expert, the Plaintiffs have not even offered to assist the Court by showing from the deposition transcript itself how their expert is either qualified or how his opinions are reliable. In fact, the August 21, 2000, transcript of Mr. Carlisle's deposition establishes these very points in Defendant's favor.

Moreover, Mr. Carlisle testified that he had not been informed of Defendant's *Daubert* Motion, let alone reviewed it. Thus, neither Mr. Carlisle's testimony nor Plaintiffs' Response rebut the (First) Affidavit of Robert D. Booth, which accompanied the *Daubert* Motion.[10]

**4.      The Evidence Establishes Mr. Carlisle is Unqualified and His Opinions Unreliable.**

      **A.      Mr. Carlisle Lacks The Basic Qualifications to Express an Opinion Under Rule 702.**

Mr. Carlisle's only mining experience consists of 5.5 years between 1976 and 1982.[11]

---

[10] Included in the evidence presented by Mr. Booth in his first Affidavit of Robert D. Booth were facts demonstrating that in 1975 he had conducted a geotechnical study of structural damage to one of the very buildings examined visually by Mr. Carlisle, and found such damage to have been caused by expansive soils, rather than blasting, as opined by Mr. Carlisle on the basis of a bare visual inspection.

[11] The following outlines Mr. Carlisle's work history (from 6/21/00 deposition):

| | |
|---|---|
| South Dakota School of Mines  -  9/64 to 6/67 | Carlisle Depo., Ex. 13* |
| Trane Company  - 6 mos (6/67 to 12/67) | Carlisle Depo., p. 11 |
| York Division, Borg Warner  -  6/67 to 8/70 (3 yrs) | Carlisle Depo., Ex. 13; p. 11 |
| Idatex Corp.  -  8/70 to 8/72 (2 yrs) | Carlisle Depo., Ex. 13, pp. 11-12 |
| York Division, Borg Warner  -  8/72 to 8/76 | |
|       Saleman (4.0 yrs) | Carlisle Depo., Ex. 13, pp. 12-13 |
| Kerr-McGee, Church Rock Mine  -  8/76 to 2/78 (1.5 yrs) | Carlisle Depo., Ex. 13, p. 13 |
| Gulf Minerals    1978 to 1980  (2 yrs) | Carlisle Depo., pp. 16, 19 |
| Homestake Mining   1980 to 1982  (2 yrs) | Carlisle Depo., p. 19 |
| Palo Verde Nuclear Gen. Plant (Phx)  - 1982 (6 mos) | Carlisle Depo., pp. 21-22 |
| UNM (Gallup Branch)  8/82 to 2/85  (2.5 yrs) | Carlisle Depo., pp. 22-23 |
| U.S. Public Health Service  -  2/85 to 10/98  (12.5 yrs) | Carlisle Depo., pp. 23-25 |
| *Carlisle Depo., Ex. 13, attached hereto as Exhibit "C" | |

During that period, he worked entirely in underground mines. (Carlisle Depo., 06/21/00, p. 20.) He has no expertise in the design of coal mine, or open pit, blast criteria which is the type of blasting relevant to the Plaintiffs' claims. *Id.*, p. 97. His experience in measuring the effects of blasting is, in fact, not as Plaintiffs suggest. Resp., p. 8.

He has no experience in scientifically measuring the surface effects of blasting. Carlisle Depo., pp. 48-50. His only experience in surface blast damage on buildings was during a summer job in 1965 at the South Dakota State Cement Plant doing "politics" with homeowners complaining about blasting. (Carlisle Depo., 6/21/00, pp. 29-31, 35, 38, 45. Ex. 13)

Despite the obvious flaws in Mr. Carlisle's qualifications, the Plaintiffs make the unsupported assertion that he has "knowledge and understanding of blasting and its potential effects," and in support of this statement, the Plaintiffs point to Mr. Carlisle's summer job at the South Dakota State Cement Plant. Resp., p. 8. To support an expert's qualifications and reliability on this type of experience is ludicrous.

Mr. Carlisle's lack of qualifications is strikingly illustrated by his attempt to interpret the blasting records for the month of June 1995, which were uncovered by the Defendant. Mr. Carlisle testified that the blast from the Twin Buttes quarry on June 10, 1995, had a "peak particle velocity" of two (2) inches per second. However, he admitted that he had never done such a calculation before, that he arrived at this figure simply by extrapolating from the report of Defendant's expert, Robert D. Booth (Carlisle Depo., p. 36), and that he was not familiar with the equation in any context outside of this case. *Id.*, p. 38.

Defendant's expert (in the Second Affidavit of Robert D. Booth, filed concurrently herewith) establishes that Mr. Carlisle's interpretation of the blast record of June 10, 1995, is

flawed, and his use of the peak particle velocity formula was erroneous. (Second Booth Affidavit, ¶¶ 4 -14). **Mr. Carlisle does not know how to use a basic formula for measuring the effects of blast vibrations without a seismograph.** Mr. Booth's evaluation of Mr. Carlisle's deposition testimony indicates Mr. Carlisle lacks any threshold qualifications to voice an opinion in this case as a "blasting expert."

### B.   Mr. Carlisle's Deposition Shows His Methodology and Theories to be Unreliable.

An expert cannot support conclusions based on purely subjective evaluations derived from visual inspection alone. *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 153-155 (1999). The Plaintiffs have the burden of showing that their expert passes muster under *Daubert* and that his opinions have "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation." *Mitchell v. Gencorp. Inc.,* 165 F.3d 778, 780 (10th Cir. 1999).

Nevertheless, the Plaintiffs argue that Mr. Carlisle's visual observations of their property and nearby properties indicated that "damage would be consistent with damage from blasting as opposed to settlement of moisture-soaked soils," and that the "similar cracking patterns" in the various properties and "temporal relationship" are indicative of blasting damage. Resp., p. 9.[12] The Plaintiffs' Response by its very terms supports the Defendants' position - - the opinions of Plaintiffs' expert are based solely on subjective evaluations.

Mr. Carlisle's August 21, 2000, testimony attempted to support his supposition that

---

[12] The Defendant has presented evidence, however, that the only facts with any temporal relevance, and which have been **scientifically** verified by Defendant's expert, is the 1992 evidence of flooding, drainage problems and resulting foundation damage to Plaintiff's property. See Carlisle Depo., Ex. 6 (Haynes Report) and Ex. 7 (Augie Durante Memo. of 8/27/92).

blasting did not directly cause the Plaintiffs' damage, but that blasting caused settling of the soil under the building. (Carlisle Depo., p. 46.) However, Mr. Carlisle admitted he has no knowledge of the soils under the structure, is not a geologist, is not a geotechnical engineer, has performed no subsurface evaluation of the soils, and studied no geological source materials about the Durante property. *Id.*, pp. 46-47, 48.

With respect to his use of Internet materials on rock mechanics, Mr. Carlisle admitted that his only experience in geology was in a one-semester course in college, that he has never taught a course on the subject, that he has taken no licensure courses in geology, that he consulted no geology treatises, *Id.*, pp. 51-52, and based his rock mechanics theory on nontechnical experience. *Id.*, p. 54.

With respect to his supposition of blast-induced cracking of sub-surface rock and settling of silty soils into those cracks, which he researched after his June 21 deposition, Mr. Carlisle admitted he did not verify his theory with any expert. (Carlisle Depo., pp. 27-28, 47.) When asked what would be the relevance of the strength of any particular blast if he had no scientific basis to know the type of rock under the building, Mr. Carlisle's response was that it was just "common sense." *Id.*, pp. 47-48. In fact this "common sense" is inherently inconsistent. Mr. Carlisle's "report" of April 15, 2000, does not indicate the damage was a result of soil settlement, but rather from the **direct** effects of blasting. The report explicitly states that concentric cracks **on the surface** running east to west "are consistent with seismic forces that could have resulted from blasting of excessive force . . .."

As demonstrated by the Second Affidavit of Robert D. Booth, the opinions of Mr. Carlisle about rock mechanics, microfracturing of rock and the migration of soil, which he

expressed in his August 21, 2000 deposition, are flawed, unreliable and unsupportable. (Second Booth Affidavit, ¶¶ 10, 11, 15-19).

## 5.    The Court Need Not Hold a *Daubert* Hearing.

The Plaintiffs posit that the Court should hold a *Daubert* hearing because such a procedure should be used "in all but the most clearcut cases." Resp., p. 3. The Plaintiffs do not dispute that the Court may make a *Daubert* ruling with a sufficiently developed record on the basis of a motion *in limine*. *Goebel v. Denver and Rio Grande Western Railroad Co.*, 215 F.3d 1083 (10th Cir. 2000). See also. *Claar v. Burlington N.R.R.*, 29 F.3d 499, 502-05 (9th Cir. 1994)(discussing district court's technique of ordering experts to submit serial affidavits explaining the reasoning and methodology underlying their conclusions).[13] Under the law of this Circuit, and given the lengthy deposition testimony of Mr. Carlisle and the affidavits of Mr. Booth, the Court is well-positioned to rule on the pleadings. This is a "clear-cut" case of an unqualified expert presenting "junk science."

## 6.    The Plaintiffs Are Not Entitled to Obtain Another Expert.

The Plaintiffs assert that if Mr. Carlisle is excluded, then they should be entitled to name another expert, citing *Ancho v. Pentek Corp.*, 157 F.3d 512 (7th Cir. 1998). However, the *Ancho* case does not support the proposition for which it is cited.[14]  Plaintiffs' expert disclosure deadline passed more than five months ago, and Plaintiffs have known of their expert's

---

[13] The Court's *Daubert* decision is reviewed for an abuse of discretion. *GE v. Joiner*, 522 U.S. 136 (1997).

[14] In *Ancho*, plaintiff's expert was disqualified under *Daubert* and the trial court granted leave for the plaintiff to identify another expert. The plaintiff decided to stick with its first expert, and requested reconsideration of the *in limine* ruling. The court denied that motion, entered summary judgment for the defendant, and the Seventh Circuit affirmed without passing on the whether the trial court correctly allowed the naming of another expert .

deficiencies for months.  At Mr. Carlisle's June 21, 2000, deposition, defense counsel specifically stated he would seek to disqualify Mr. Carlisle.  Carlisle 06/21/00 Depo, p. 138, lines 16-19.  Realizing his expert's obvious deficiencies, Plaintiffs' counsel took his own expert's deposition on August 21, 2000.  Under the circumstances, the admonition of *Weisgram v. Marley*, 528 U.S. 440 (2000) is clearly applicable:  "It is implausible to suggest, post-*Daubert*, that parties initially present less than their best expert evidence in the expectation of a second chance should their first try fail."  120 S. Ct. at 1021.

7.    **Conclusion.**

For the reasons stated herein and in Defendant's *Daubert* Motion, its supporting Memorandum, as well as in the Affidavits of Robert D. Booth, the Court should exclude Plaintiffs' expert, Gary Thomas Carlisle, or alternatively hold a hearing to determine same.  The Court should further sanction Plaintiffs and their counsel with an award of expert witness fees, attorneys fees, and costs in favor of Defendant.

Respectfully submitted,

DINES, GROSS & ESQUIVEL, P.C.

By _____
William D. Winter
Attorneys for Defendant American States
Insurance Co.
6301 Indian School Road NE, Suite 900
Albuquerque, NM  87110
(505)889-4050

I hereby certify that a true copy of the above was hand delivered this 22nd day of September, 2000 to: Pete V. Domenici, Jr., 6100 Seagull St., NE #205, Albuquerque, NM 87109.

_____
William D. Winter

F:\SAFECO\Durante Pleadings\Daubert.Reply.wpd

# DINES, GROSS & ESQUIVEL, P.C.

## ATTORNEYS AND COUNSELORS AT LAW

6301 INDIAN SCHOOL ROAD NE
SUITE 900
ALBUQUERQUE, NEW MEXICO 87110

TELEPHONE: 505-889-4050
FAX: 505-889-4049

JIM M. DINES
MARTIN R. ESQUIVEL
MICHAEL A. GROSS
* PETER H. PIEROTTI
WILLIAM D. WINTER

* ALSO LICENSED IN COLORADO

E-MAIL: wdw@dge.psemail.com

In Reply Please Refer to:
75010.99086

May 12, 2000

**VIA FACSIMILE (884-3424)**

Pete V. Domenici, Jr. Esq.
DOLAN & DOMENICI, P.C.
6100 Seagull NE, Suite 205
Albuquerque, NM 87109

> RE: *Augie Durante, et al. v. American States Insurance, et al*
> *Eleventh Judicial District Court Cause No. CV 99-240-II*

Dear Mr. Domenici:

I am in the process of finalizing our Rule 26(a)(2) expert disclosures for delivery to you on Monday, May 15, 2000. However, we would like to supplement our experts' reports if and when we are able to obtain blasting records from the Hamilton Brothers Construction Company. In that regard, I would request that you stipulate to allowing experts for both the Plaintiffs and the Defendant to supplement their reports to include an analysis of such data, if and when it is available.

If this is acceptable, please confirm in writing by 5:00 p.m. today. If you do not agree, it would be my intent to file a motion with the Court to extend the deadline.

Thank you for your continued cooperation in this matter. If you have any questions please do not hesitate to call our office.

Very truly yours,

DINES, GROSS & ESQUIVEL, P.C.

By _William D. Winter_
William D. Winter

WDW/sam

*I agree*

*Pete D*

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AUGIE DURANTE and
PAUBLITA DURANTE,

      Plaintiffs,

vs.                                             No. CIV 99-1179 RLP/DJS

AMERICAN STATES INSURANCE COMPANY,

      Defendant.

## NOTICE OF SUPPLEMENTATION

COMES NOW, the Plaintiff by and through their counsel of record Dolan & Domenici,

P.C. (Pete V. Domenici, Jr., Esq.) and supplements their disclosures as follows:

1.     The Plaintiffs will use blasting records which were attached as exhibits to Bob

Booth deposition.

2.     Plaintiffs will use standards from various states, including Indiana, for peak

particle velocities at distances from quarries.

DOLAN & DOMENICI, P.C.

PETE V. DOMENICI, JR., Esq.
Attorneys for Plaintiffs
6100 Seagull Street N.E., Suite 205
Albuquerque, New Mexico 87109
(505) 883-6250



EXHIBIT
B

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NO: CIV 99-1179 RLP/DJS

AUGIE DURANTE and
PABLITA DURANTE,

                    Plaintiffs,

vs.

AMERICAN STATES INSURANCE COMPANY,

                    Defendant.

DEPOSITION OF GARY THOMAS CARLISLE

June 21, 2000
11:00 a.m.
6301 Indian School, Northeast
Albuquerque, New Mexico

            PURSUANT TO THE APPLICABLE RULES OF CIVIL
PROCEDURE this deposition was:

TAKEN BY:   WILLIAM D. WINTER, ESQ.
            Attorney for Defendant

REPORTED BY:   Anne E. Dehon, NM CCR #263
               Hughes Southwest Court Reporters
               300 Central, Southwest
               Albuquerque, New Mexico

EXHIBIT
C

(FORM 9-76)

**IMPORTANT**-Do not fill in until you read and understand this form. This form must be filled in completely and should be typewritten. The application shall be accompanied by the proper filing fee.

RECEIVED

MAY 3 1977

PROFESSIONAL ENGINE

**STATE OF NEW MEXICO**
**BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS AND LAND SURVEYORS**

**EXHIBIT** 13 Carlisle

## 1. GENERAL INFORMATION

Name in full _GARY THOMAS CARLISLE_ Social Security No. ▓▓▓▓▓

Mailing/Residence address _688 JAY ST._, City _GALLUP_, State _NEW MEXICO 87_

Present position (Your title and Firm Name) _SHIFT BOSS - KERR McGEE CORP._

Business address _____, City _CHURCHROCK_, State _NEW MEXICO_

Birthplace _FISKBURG, KY._ Date of Birth _FEB 5, 1936_ Citizenship _U.S._

Application is hereby made for registration as a Professional Engineer _X_; Land Surveyor_____

Engineer-in-training_____; (Check applicable) Have you previously applied to this Board? _No_

Are you a New Mexico E.I.T.? _No_ Are you applying for reinstatement? _No_

State branch of engineering in which you consider yourself best qualified _MINING ENGINEERING_

## 2. REFERENCES

Give the names and addresses of five persons, not members of the Board, three or more of whom shall be registered engineers in New Mexico or another state, who have personal knowledge of your character and experience. In the case of land surveyor applications, three or more shall be registered land surveyors.

| NAME | COMPLETE ADDRESS | POSITION |
|---|---|---|
| C. W. ALFORD, Jr. | 300 NE 46th St. Oklahoma City, OKLA. 73105 | President - SDI, Inc. |
| Rodger F. Sturgeon, P.E. | 507 VANDEN BOSCH PKWY, Gallup, NMex 87301 | Electrical Superintendent - K McGEE Churchrock. |
| EARL T. McARTHUR, P.E. | 2062 12th Ave. Belle Fourche, S.DAK. 57717 | S.D. STATE Highway Dept. |
| John R. Carlisle, P.E. | R.T #2 - Fair Rd. Sidney, OHIO 45356 | Contractor - Sidney Electric |
| AL Phlieger | 510 LA Cima Cir. Gallup, NM 87301 | Superintendent - Kerr McG. Churchrock open |
| F. Ronald Callaway | | |
| Dwayne Trythall | | |

## 3. EDUCATION

Give in chronological order the name and location of each high school, college or university attended, the time spent in each and, if graduated, the course taken, the degree received and date graduated; also list time spent in correspondence or night schools, graduate work, etc. An official transcript of your college record must be sent to the Board by the college before the application will be considered.

| Name and Location of School | From Date To Date | Date Graduated | Technical Course | Degree Received |
|---|---|---|---|---|
| (night) → Simon Kenton High School, Independence, Ky | Sept 1950 | June 1954 | NONE | General |
| Eastern New Mexico University, Roswell, NM | 1958-1963 | N/A | — | — |
| South Dakota School of Mines & Technology Rapid City, S.D. | 1963-A'67 | June 1967 | Mining Engineering | B.S. |

## 4. PREVIOUS REGISTRATION

| Name of State | Year Registered | How Registered (educational experience, written or oral exam., reciprocity, long experience, etc.) | P.E., L.S. or E.I.T. | Reg. No. |
|---|---|---|---|---|
| South Dakota | 1967 | Written Test (8 hr) | E.I.T. | 1159 |
| OKLAHOMA | 1973 | Written Test (8 hrs and SD EIT) | P.E. | 9303 |

| DATES<br><br>From — To | TIME SPENT<br><br>(To Tenths of Years) | NAME OF EMPLOYER, CHARACTER AND TITLE OF EACH POSITION — Give concise explicit statement, including magnitude and complexity of work, your duties and degree of responsibility.   Start a new engagement with each significant change in assignment or responsibility, (Instrumentman, Inspector, Asst., Engr., GS-10, etc.)  List engagements chronologically from past to present. Use extra sheets if necessary. | NAME, TITLE AND ADDRE of engineer familiar with ea engagement, preferably yo immediate superior. |
|---|---|---|---|
| June 1954<br><br>June 1964 | 10.0 years | USAF - Air Policeman | N/A |
| Sept 1964<br><br>June 1967 | 3.0 years | student - South Dakota School of mines and Technology, Rapid City, S.D. | Edwin Oshier, P.E.<br>Mining Engineering<br>Department Head. |
| June 1965<br><br>Sept 1965 | 0.25 | South Dakota State Cement Plant<br>Rapid City, S.D.<br>Summer Job - Exposed to All phases of Limestone Quarry Operations - Blasting Transportation, Crushing - Pit Planning. | Under Supervision<br>mining Dept. SDSM |
| June 1966<br><br>Sept 1966 | 0.25 | Chino Pit - Kennecott Copper Corp.<br>Santa Rita, NMex.<br>Summer Job - Pit Surveying | Oliver J Newell, .<br>Kennecott Copper C<br>Santa Rita, NME |
| June 1967<br><br>August 1970 | 3.0 | York Div. Borg-WARNER Corp - Sales Engineer Responsible for Coordinating Application of York Air Conditioning Products with mechanical Engineers, Contractors and OWNERS. | F. Ron Callaway, F<br>District MANAGE<br>York Div Borg War<br>2800 Routh St.<br>Dallas, Texas |
| August 1970<br><br>August 1972 | 2.0 | Idatex Corp - Stanley, Idaho<br>Vice President - Engineering/operations Complete Charge of Field Operations pertaining to exploration and development of Mineral potential on Company Property in Central Idaho. Property was included in New - White Clouds National Park. Company was disbanded. | Mr. Ken Lee.<br>Richardson, Texas |

Experience Record — Continued

BEST AVAILABLE COPY

| DATES | TIME SPENT | NAME OF EMPLOYER, CHARACTER AND TITLE OF EACH POSITION — Give concise explicit statement, including magnitude and complexity of work, your duties and degree of responsibility. Start a new engagement with each significant change in assignment or responsibility. (Instrumentman, Inspector, Asst. Engr., GS-10, etc.) List engagements chronologically from past to present. Use extra sheets if necessary. | NAME, TITLE AND ADDRESS of engineer familiar with each engagement, preferably your immediate superior. |
|---|---|---|---|
| From — To | (To Tenths of Years) | | |
| August 1972 August 1976 | 4.0 | Sales Engineer - STATE Distributors, Inc. 300 NE 46th St. Oklahoma City, Okla. Duties as described under "York Div. Borg-WARNER" Above | Mr. C.W. Alford, Jr. 300 NE 46th St. Oklahoma City, OK. 73105 |
| Aug 1976 Present | 0.75 | Shift Boss - Kerr-McGee Corp. Churchrock OPERATIONS, Churchrock, N Mex IN Charge of 25 Miners engaged in Haulage drift, Raise, Room and Pillar Development and uranium Extraction | Al Phhager - Superint Kerr-McGee Churchrock operations Churchrock, N Mex. |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL TIME | 23.25 | | |

## 6. MEMBERSHIP IN PROFESSIONAL OR SCIENTIFIC SOCIETIES OR ASSOCIATIONS

| Name of Organization | Address | Membership Grade | Date |
|---|---|---|---|
| ASHRAE | Oklahoma City, OK. | Associate | 1968 - Present |
| OSPE | Oklahoma City, OK. | P.E. | 1973 - Present |
| NSPE. | | P.E. | 1973 - Present |
| SME | | Associate | Aug 1976 - Present |

## 7. AFFIDAVIT

STATE OF __New Mexico__

County of __McKinley__ } ss.

I, __Gary T. Carlisle__, being first duly sworn, depose and say that I am the applicant named in this application, that I have read the contents thereof, and that, to the best of my knowledge and belief, the foregoing statements are true and correct in every respect.

Subscribed and sworn to before me this

__3__ day of __May__, 19 __77__

My Commission expires __July 29, 1977__

_Gary T. Carlisle_, P.E.
(Signature of Applicant)

_Sharon L. Winston_
(Signature of Notary Public)

SHARON L. WINSTON
NOTARY PUBLIC
(SEAL)
STATE OF NEW MEXICO

Mail Application, and fee to
The Secretary
New Mexico State Board of Registration For Professional Engineers
and Land Surveyors

P. O. BOX 4847                    Santa Fe, New Mexico  87501



**RECEIVED**

JUN 13 1977

## New Mexico State Board of Registration PROFESSIONAL ENGINEERS
### FOR
## Professional Engineers and Land Surveyors
### OFFICE 1300 LUISA ST.
### SANTA FE

ADDRESS ALL COMMUNICATIONS TO
THE SECRETARY, P. O. BOX 4847, SANTA FE 87501

May 31, 1977

Mr. Harold Sliper
State Board of Engineering and Architectural Examiners
2040 West Main Street, Suite 212
Rapid City, South Dakota  57701


Dear Mr. Sliper:

Mr. Gary T. Carlisle of 688 Jay Street, Gallup, NM  87301
has filed application for registration in the State of New Mexico
and states that he is a registrant of your Board, holding E.I.T.
registration No.  1159.

Will you please fill in the information certificate on the reverse
side of this letter as completely as possible and return to our
Board office.

Thank you for your assistance in this matter.

Sincerely,

*Gloria Garcia / am*

Administrator

## CERTIFICATION OF REGISTRATION

TO: The New Mexico Board of Registration for Professional Engineers and Land Surveyors

FROM ........ SD St. Bd. of Engineering and Architectural Examiners ......................
(Name of licensing agency)

Certification is hereby made that ..... Gary Thomas Carlisle .........................................
(Name as registered or certified)

of ........................................................................................................................
(Present mailing address)

1. Was  registered / enrolled  by our Board .. 6-30-67 ........ as  a (PE,LS) ...........................
(date)
an (EIT) .. X ...........................

2. Registration or enrollment No. .. E-1159 ......., current to ...... non-expiring ...........
(date)

3. If registration has expired, give expiration date and explain: ....................................
....................................................................................................................................

4. If registered in a particular branch of engineering, please designate: ..........................

5. Registration was granted on the basis of (check all applicable bases):

  (   ) a. Endorsement by State of ......................................................................

  (   ) b. Practice of engineering at time law became effective; give period of practice prior to registration, ......................................... years;

  (   ) c. Education and experience; graduated from .... SD School of Mines & Tech. ........
     BS Min. E. .............. with additional ............ years qualified engineering experience;

  ( X ) d. Written examination(s): .......... 8 ......... hours in Fundamentals of ............ engineering;
     ......................... hours in land surveying; ...................... hours in basic (EIT) examination;
     examination grade(s), if available .......... 78% ...................................................

  (   ) e. Oral examination and interview, ...................................... hours;

  (   ) f. Long experience, ............................................. total years;

  (   ) g. Comments, other than above ......................................................................

....................................................................................................................................
....................................................................................................................................

(Seal)                                    (Signed) .......... *Harold J. Piper* ..........

Date .... 6/7/77 ............             (Title) ...... Executive Secretary ..............





RECEIVED

JUN   1977

PROFESSIONAL ENGINEERS

## NEW MEXICO STATE BOARD OF REGISTRATION FOR
## PROFESSIONAL ENGINEERS AND LAND SURVEYORS
### OFFICE 1300 LUISA ST.
### SANTA FE

May 31, 1977

ADDRESS ALL COMMUNICATIONS TO
THE SECRETARY, P. O. BOX 4847, SANTA FE 87501

Mrs. Norma Unruh
State Board of Registration for Professional Engineers
& Land Surveyors
401 United Founders Tower
5900 Mosteller Drive
Oklahoma City, OK  73112

Dear Mrs. Unruh:

Mr. Gary T. Carlisle, of 688 Jay Street, Gallup, NM  87301
has filed application for registration in the State of New Mexico
and states that he is a registrant of your Board, holding P.E.
registration No.  9303.

Will you please fill in the information certificate on the reverse
side of this letter as completely as possible and return to our
Board office.

Thank you for your assistance in this matter.

Sincerely,

*Gloria Garciafon*

Administrator

RECEIVED

JUN  9 1977

OKLA. BOARD OF REG. FOR
PROF. ENGRS. & LAND SURV.

## CERTIFICATION OF REGISTRATION

TO: The New Mexico Board of Registration for Professional Engineers and Land Surveyors

FROM ____OKLAHOMA STATE BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS & LAND SURVEYORS__
(Name of Issuing agency)

Certification is hereby made that_____Gary T. Carlisle_____
(Name as registered or certified)

of_____688 Jay Street, Gallup, New Mexico 87301_____
(Present mailing address)

1. Was ~~registered~~ by our Board____3-9-73____ as a (PE/PS) __Professional Engineer____
   ~~enrolled~~                        (date)          an (EIT)_____

2. Registration or enrollment No.____9303_____, current to____6-30-78_____
                                                                    (date)

3. If registration has expired, give expiration date and explain:_____--_____

   _____

4. If registered in a particular branch of engineering, please designate:____DNA_____

5. Registration was granted on the basis of (check all applicable bases):

   (  ) a. Endorsement by State of_____

   (  ) b. Practice of engineering at time law became effective; give period of practice prior to registration,

          _____years;

   (  ) c. Education and experience; graduated from_____

          _____ with additional _____years qualified engineering experience;

→ (X) d. Written examination(s):____8____ hours in____Principles & Practice of_engineering;

          _____hours in land surveying; ____8*____hours in basic (EIT) examination;
                                            * accepted from South Dakota (no grade avail
          examination grade(s), if available__P & P Grade 79%_____ abl

   (  ) e. Oral examination and interview, _____hours;

   (  ) f. Long experience, _____total years;

   (  ) g. Comments other than above_____

   _____

   _____

(Seal)                          (Signed) (Mrs.) _Norma Unruh_
                                              Norma Unruh
Date_____    (Title) ____Executive Secretary_____

New Mexico State Board of
Registration for Professional
Engineers and Land Surveyors
P.O. Box 4847, Santa Fe, N.M. 87501

BEST AVAILABLE COPY

RECEIVED

~~~ ~~ 1977

PROFESSIONAL ENGINEERS

## Abstract of Applicant's Statement of Qualifications

Name *Gary Thomas Carlisle*

Present Position *Shift Boss Kerr McGee Corp Churchrock, N Mex Operations*

Mail Address *688 Jay St. Gallup, N Mex 87301*

Place and date of birth *Fishburg, Ky. Feb 5, 1936*

Education: High School *Simon Kenton High* Date of graduation *June 1954*
College *Eastern New Mexico (WENT)* Date of graduation *NA*
College *South Dakota School of Mines & Tech* Date of graduation *June 1967*

Application for registration as ( PE, PE&LS, LS, or EIT) *P.E.*
Training and professional experience indicated below: (As listed on application.)

| ENGAGE-MENT NO. | DATES FROM | DATES TO | JOB TITLE AND LOCATION OF WORK | NAME AND ADDRESS OF EMPLOYER | TIME EMPLOYED TOTAL TIME | TIME EMPLOYED RESPONSIBLE CHARGE # |
|---|---|---|---|---|---|---|
| 1 | 1954 | 1969 | USAF Air Police | USAF | 10.0 | 4.0 |
| 2 | 1964 | 1967 | Student - SDSM&'T | South Dakota School of Mines Tech - Rapid City, SD. | 3.0 | 0 |
| 3 | June 1965 | Sept 1965 | Summer Student South Dakota State Cement Plant Quarter | State of South Dakota Rapid City, S.D. | .25 | 0 |
| 4 | June 1966 | Sept 1966 | Summer Student Mine Surveying | Kennecott Copper Corp Santa Rita, N Mex | .25 | 0 |
| 5 | 1967 | 1970 | Sales Engineer Dallas, Texas | York Div Borg Warner 2900 North Dallas, Tex | 3.0 | 3.0 |
| 6 | 1970 | 1972 | Mining Engineer Stanley, Idaho | Idatex Corp. Stanley Idaho | 2.0 | 2.0 |
| 7 | 1972 | 1976 | Sales Engineer Oklahoma City, Okla | State Dist, Inc 3000 46 St, Okla City, OK. | 4.0 | 4.0 |
| 8 | 1976 | Present | Shift Boss Churchrock, N. Mex | Kerr McGee Churchrock, NMex | 0.75 | 0.75 |
| 9 | | | | | | |
| 10 | | | | | | |

Total years (to tenths) . . . . . . . . . . . . . . . . . . . . 23.25   13.75

*Section 3 of the New Mexico Engineering Practice Act defines "Responsible Charge" as follows: "responsible charge of work" means the independent control and direction, by using initiative, skill and independent judgment, of the investigation or design of engineering work or the supervision of such projects.

DATE: *May 23, 1977*

*Gary T. Carlisle, P.E.*  APPLICANT
*688 Jay St.*
*Gallup, N. Mex 87301*  ADDRESS

(OVER)